CITY OF GREENWOOD, Indiana, Felson and Jane Bowman, and Zinkan & Barker Development Company, LLC, Appellants–Plaintiffs,

v.

TOWN OF BARGERSVILLE, Indiana, Appellee–Defendant.

No. 41A05–0912–CV–684.

Court of Appeals of Indiana.

July 15, 2010.

■■■■■■■■■■■■■

Karl L. Mulvaney, Wayne C. Turner, Gregory A. Neibarger, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellants City of Greenwood, Indiana, Felson and Jane Bowman, and Zinkan & Barker Development Company, LLC.

Nicholas K. Kile, Mark J. Crandley, Hillary Close, Barnes & Thornburg LLP, Indianapolis, IN, Brian J. Deppe, Deppe Fredbeck & Boll, Franklin, IN, Attorneys for Appellee.

David F. Tudor, Tudor Law Office, Noblesville, IN, Attorney for Amici Curiae Indiana Municipal Managers Association, Town of Eaton, Town of Whitestown, and Town of Yorktown.

## OPINION

CRONE, Judge.

### Case Summary

The City of Greenwood, Indiana ("Greenwood"), Felson and Jane Bowman, and Zinkan & Barker Development Company, LLC ("ZBDC") (collectively, "Appellants"), appeal the trial court's order denying their cross-motion for summary judgment and granting the motion for summary judgment filed by the Town of Bargersville, Indiana ("Bargersville"), in which the court upheld Bargersville's annexation of 1847 acres ("the Territory") within three miles of Greenwood's city limits and voided Greenwood's attempted annexation of the Territory. Because we find as a matter of law that fewer than 51% of the Territory's landowners consented to Bargersville's annexation pursuant to Indiana Code Section 36–4–3–9, we reverse and remand.

### Issues

We address the following issues raised in the parties' briefs:

I. Do Appellants have standing to seek a declaratory judgment regarding the validity of Bargersville's annexation based on whether 51% of the Territory's landowners consented to the annexation?

II. If so, then did the trial court err in concluding that 51% of the Territory's landowners consented to Bargersville's annexation?

### Facts and Procedural History[1]

Annexation proceedings may take one of three forms under Indiana's statutory scheme. The first of these may be initiated by a municipality that wishes to annex either contiguous territory or noncontiguous territory that meets certain statutory requirements. Ind.Code § 36–4–3–4. The municipality's legislative body must first introduce a proposed annexation ordinance and then hold a public hearing on the proposed annexation before it may adopt an ordinance to annex the territory. The ordinance must then be published in accordance with statutory requirements. Ind.Code § 36–4–3–7. Within ninety days of publication, the annexation may be appealed in court by filing a written remonstrance signed by at least 65% of the landowners in the annexed territory or landowners holding more than 75% of the assessed valuation of the land in the annexed territory.

---

1. We heard oral argument on June 7, 2010, in Indianapolis. We thank counsel for their presentations.

Ind.Code § 36–4–3–11.[2]

An annexation may also be initiated by landowners who wish to be annexed to a contiguous municipality. A petition must be submitted to the municipality's legislative body that has been signed by at least 51% of the landowners in the territory sought to be annexed or landowners holding 75% of the total assessed value of the territory. Ind.Code § 36–4–3–5.[3] If the municipality's legislative body fails to adopt an annexation ordinance within a specified period of time, then the petitioners may hale the municipality into court. *Id.*[4]

The third form of annexation—at issue here—involves towns that wish to annex territory near a city. Prior to 2005, Indiana Code Section 36–4–3–9 and its predecessors provided that a town, such as Bargersville, was required to obtain the consent of the legislative body of a second or third class city, such as Greenwood, before annexing territory within three miles of the city's corporate boundaries. If the city did not consent, then the terri-

tory could not be annexed. In 2005, the Indiana General Assembly amended Indiana Code Section 36–4–3–9 to read in pertinent part as follows: [5]

(b) A town must obtain the consent of the legislative body of a second or third class city before annexing territory within three (3) miles of the corporate boundaries of the city *unless:*

(1) the town that proposes to annex the territory is located in a different county than the city; or

(2) *the annexation by the town is:*

(A) an annexation under section 5 or 5.1 of this chapter; or

(B) *consented to by at least fifty-one percent (51%) of the owners of land in the territory the town proposes to annex.*

(c) In determining the total number of landowners of the annexed territory and whether *signers of a consent* under subsection (b)(2)(B) are landowners, the names appearing on the tax duplicate for that territory constitute prima facie

---

2. "On receipt of the remonstrance, the court shall determine whether the remonstrance has the necessary signatures." Ind.Code § 36–4–3–11(b).

    If the court determines that the remonstrance is sufficient, it shall fix a time, within sixty (60) days of its determination, for a hearing on the remonstrance. Notice of the proceedings, in the form of a summons, shall be served on the annexing municipality. The municipality is the defendant in the cause and shall appear and answer. Ind.Code § 36–4–3–11(c). Following the hearing, the court shall, "without delay, enter judgment on the question of the annexation according to the evidence that either party may introduce." Ind.Code § 36–4–3–12(a). Indiana Code Section 36–4–3–13 contains the guidelines that a court must follow in determining whether a proposed annexation shall take place.

3. Indiana Code Section 36–4–3–5.1 and other statutes mentioned therein govern procedures

for a petition signed by 100% of landowners in the territory proposed to be annexed.

4. *See* Ind.Code § 36–4–3–5(d) ("The court shall hear and determine the petition without a jury, and shall order the proposed annexation to take place only if the evidence introduced by the parties establishes that: (1) essential municipal services and facilities are not available to the residents of the territory sought to be annexed; (2) the municipality is physically and financially able to provide municipal services to the territory sought to be annexed; (3) the population density of the territory sought to be annexed is at least three (3) persons per acre; and (4) the territory sought to be annexed is contiguous to the municipality. If the evidence does not establish all four (4) of the preceding factors, the court shall deny the petition and dismiss the proceeding.").

5. The amendment was made effective retroactive to January 1, 2004.

evidence of ownership. Only one (1) person having an interest in each single property, as evidenced by the tax duplicate, is considered a landowner for purposes of this section.

(Emphases added.)

We now turn to the factual background of this case, which the trial court summarized in its order as follows: [6]

Under Indiana law, Bargersville is a town and Greenwood is a second or third class city. Both Bargersville and Greenwood are attempting to annex the same area of land located in Johnson County, which is within three miles of the corporate limits of Greenwood. Greenwood first contemplated annexing the disputed area in the 1980's. Rather than annexing the area, Greenwood decided to enter into sewer service agreements for certain locations located within the disputed area. One of those agreements was originally entered into by Greenwood and Bradford Development Corporation on November 15, 1994, whereby Greenwood would provide sewer service for the Bradford Place Development. On August 6, 1996, Greenwood entered into another sewer service [agreement], but with Waters Edge Development Co., to service the Waters Edge Development. On November 1, 2001, Greenwood entered into an agreement to service the Cobblestone Development. All the aforementioned agreements have been filed with the Office of the Recorder of Johnson County. Greenwood also completed portions of the Western Regional Interceptor project in 2001.

Subsequently, Greenwood completed construction on the Cobblestone lift station and started providing service on June 4, 2004, which included areas of the Bargersville annexation. Around the same time, Greenwood also entered into a contract with Zinkan & Barker to serve the Lone Pine Farms development in 2007. As a result, Greenwood's infrastructure was oversized to accommodate the current and future developments.

Greenwood also contracted with the Bowmans whereby [ ] Greenwood would provide the Bowmans with Sewer Allocation Credits in exchange for easements running across the Bowmans' property. Greenwood secured the easements with the intention of extending the Western Regional Interceptor infrastructure.

On the other hand, Bargersville entered into an agreement on March 26, 2006, with Bennett–Brizendine to improve Bargersville['s] sewer infrastructure. The agreement contemplated the construction of sewer lift stations, interceptor lines and other sewer works to serve the landowners in the annexation territory. The construction of the aforementioned facilities was completed on August 9, 2006, and service of the area started on that date as well.

As a result, the Bargersville Town Council ("Council") introduced an ordinance on November 13, 2007, that began the process of annexing 3,360 acres of property in the northwest portion of Johnson County [which included land owned by ZBDC and the Bowmans]. The Council amended the acreage to a final total of 1,847 acres. The total number of parcel owners in the acreage

---

**6.** Each side has asserted that the other's statement of facts is misleading and/or inappropriately argumentative, with Bargersville going so far as to file a motion to strike portions of Appellants' reply brief. We decline to waste judicial resources on refereeing this squabble and simply remind counsel that shading facts and sniping at one's opponent does nothing to enhance one's credibility or advance the interests of one's client.

was 739. Bargersville held a public hearing on October 15, 2008. The Council concluded that Greenwood did not consent to the annexation, thus by statute Bargersville had to secure consent from 51% of the landowners in the proposed annexation territory. Relying upon annexation waivers as a form of consent, the Council concluded that Bargersville had obtained the consent of more than 51% of the landowners in the proposed annexation territory. The Council also recognized that four parcel owners objected to the annexation. However, a remonstrance was never filed, and the deadline to file a remonstrance was January 20, 2009.

In reaching it[s] conclusion that over 51% of the landowners consented to the annexation, the Council relied upon the following facts. First, 44 parcel[ ] owners signed a document titled "Petition for and Consent to Annexation into the Town of Bargersville." These 44 parcel owners expressly consented to annexation by Bargersville. 39 parcel owners signed a Sewer Service Agreement for the Tremont Project. The document signed is entitled "Annexation Waiver, Request and Consent." The document contains the following clause:

> The Owner, for himself, his legal representatives, heirs, devisees, trustees, grantees, successor[s] and/or assigns, agrees to forever waive any and all objections and statutory remedies he may have with regard to any and all potential annexation of the Real Estate and/or any part thereof by the Town of Bargersville, Indiana, and he hereby consents to any and all such annexations.

However, prior to using the aforementioned clause, Bargersville used a clause titled "Annexation Waiver," which did not contain the word consent. Rather, the clause used stated as follows:

Annexation Waiver. The owner covenants and agrees for itself, his legal representatives, heirs, devisees, trustees, grantees, successor[s] or assigns, that no objection to any annexation of the Real Estate or any part thereof by the Town shall be made, that no remonstrance be filed, nor shall any appeal against annexation be taken. This release of rights to object, remonstrate or appeal against annexation shall be noted on every recorded plat of Real Estate in the plat restrictions and covenants in the complete form as set forth below ...

The parties stipulated that 387 parcel owners signed a document that contained one of the aforementioned waivers. The parties also agreed that another 281 parcel owners purchased land with an "Annexation Waiver" in their chain of title. As a result, 668 of the 739 total parcels in the annexation territory have either expressly signed an annexation waiver or purchased land with an annexation waiver in their chain of title. Conceivably, the service area[s] for both Greenwood and Bargersville overlap, which resulted in this lawsuit.

Appellants' App. at 13–15.

The lawsuit commenced on September 17, 2008, when Appellants filed a complaint against Bargersville for declaratory judgment and injunctive relief. Appellants alleged that "Bargersville has not obtained consent to annexation by fifty-one percent (51%) of the landowners in the Territory" and asked the trial court both to declare Bargersville's annexation ordinance invalid and to enjoin Bargersville from taking any action to implement the ordinance. *Id.* at 50. The trial court set an injunction hearing for September 25, 2008. On September 24, 2008, Appellants and Bargersville filed a joint motion for entry of agreed

preliminary injunction order and request to vacate hearing. That same day, the trial court approved the agreed order, which provided that Bargersville could vote to adopt the ordinance but that the ordinance would not take effect until further order of the court. On October 15, 2008, the Bargersville Town Council adopted an amended version of the proposed annexation ordinance that excluded land owned by ZBDC and the Bowmans from the Territory.

On October 17, 2008, Bargersville filed its answer and counterclaims, in which it denied the allegations in Appellants' complaint and requested both an injunction against Greenwood's simultaneous efforts to annex "some or all of the Territory" and "a declaratory judgment that the Greenwood Annexation is void and invalid because of Bargersville's first-in-time annexation." *Id.* at 151, 152. Greenwood "introduced an initial annexation ordinance of the disputed area on November 11, 2008." *Id.* at 37–38.

On May 8, 2009, Bargersville filed a motion for summary judgment, as well as an evidentiary stipulation of the parties and a supporting brief in which it argued, among other things, that Appellants did not have standing to contest its annexation of the Territory. On June 8, 2009, Appellants filed a cross-motion for summary judgment. The trial court held a hearing on the motions on July 23, 2009, and issued an order granting Bargersville's motion and denying Appellants' cross-motion on November 9, 2009.

In its order, the trial court found that although Appellants would not have standing to remonstrate because they did not own land in the Territory, they did have standing to bring a declaratory judgment action because "Bargersville's annexation affects each Plaintiff's rights under certain contracts amongst themselves" and "gives Greenwood the right to determine whether its right to withhold consent was properly avoided." *Id.* at 38. The trial court also found, however, that "Bargersville obtained consent from more than 51% of the landowners [in the Territory] based upon the finding, as a matter of law, that previously signed annexation waivers were tantamount to the statutory required consent." *Id.* The court further found that Bargersville has exclusive annexation of the disputed territory and that "Greenwood's second in time annexation is void as a matter of law." *Id.* at 38, 37. The court also enjoined Greenwood "from serving the disputed area." *Id.* at 39. This appeal ensued. Additional facts will be provided as necessary.

**Discussion and Decision**

Our standard of review in such cases is well settled:

> When determining the propriety of an order granting summary judgment, we use the same standard of review as the trial court. Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Once the moving party meets these two requirements, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact by setting forth specifically designated facts. We must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. If the trial court's grant of summary judgment can be sustained on any theory or basis in

the record, we must affirm. Additionally, where the issue presented on appeal is a pure question of law, we review the matter de novo.

*Ryan v. Brown,* 827 N.E.2d 112, 116–17 (Ind.Ct.App.2005) (quotation marks and some citations omitted).[7]

Furthermore, we note that

[t]he fact that the parties made cross motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. They merely aid our review by providing us with a statement of reasons for the trial court's actions.

*Decker v. Zengler,* 883 N.E.2d 839, 842 (Ind.Ct.App.2008) (citations omitted), *trans. denied.*

### I.  Do Appellants Have Standing to Seek a Declaratory Judgment?

■  As a preliminary matter, Bargersville contends that the trial court erred in concluding that Appellants have standing to seek a declaratory judgment regarding the validity of Bargersville's annexation based on whether 51% of the Territory's landowners consented to the annexation. We have stated that

[t]he judicial doctrine of standing focuses on whether the complaining party is the proper person to invoke the court's power. Standing is similar to, though not identical with, the real party in interest requirement of Indiana Trial Rule 17. Both are threshold requirements intended to insure that the party before the court has the substantive right to enforce the claim being asserted. Under the traditional private standing doctrine, a party must demonstrate both a personal stake in the outcome of the lawsuit and, at a minimum, that he is in immediate danger of sustaining some direct injury as a result of the conduct at issue.

*Hosler ex rel. Hosler v. Caterpillar, Inc.,* 710 N.E.2d 193, 197 (Ind.Ct.App.1999) (citations, quotation marks, and brackets omitted), *trans. denied.* "[T]he question of whether a party has standing is purely one of law and does not require deference to the trial court's determination." *Wood v. Walden,* 899 N.E.2d 728, 731 (Ind.Ct. App.2009).

---

7.  Bargersville contends that "Greenwood's attack on Bargersville's annexation ordinance must ... be placed within the context of the legislative factfinding that Greenwood asks the Court to review"—namely, the Bargersville Town Council's finding that more than 51% of the landowners in the Territory consented to the annexation—and that the separation of powers doctrine requires us to review that decision under a deferential arbitrary-and-capricious standard. Appellee's Br. at 14–15 (citing *Bd. of Comm'rs of Vanderburgh County v. Three I Props.,* 787 N.E.2d 967, 976 (Ind.Ct.App.2003)). We disagree. Greenwood is not asking us to review the Town Council's legislative factfinding, but rather the trial court's legal determination that the Town Council had authority pursuant to Indiana Code Section 36–4–3–9 to adopt its annexation ordinance. "The law is the province of the judiciary and our constitutional system empowers the courts to draw legal conclusions." *Oliver & Iverson v. Honeycutt,* 798 N.E.2d 890, 892 (Ind.Ct.App. 2003). Moreover, as Appellants correctly observe, "the question of whether Bargersville has the consent of 51% of the landowners does not raise any genuine issue of fact given the parties' stipulated facts." Appellants' Reply Br. at 7.

■ Bargersville first contends that Indiana Code Section 36–4–3–9 does not confer standing on Greenwood to challenge the validity of the annexation, given that the statute was amended in 2005 to take "away Greenwood's right to unilaterally stop a town's annexation[.]" Appellee's Br. at 42. While it is true that a city may no longer "unilaterally stop" an annexation under Indiana Code Section 36–4–3–9, the fact that a city has statutory authority to withhold its consent to an annexation indicates that it retains a significant protectable interest in the three-mile "buffer zone" surrounding its corporate boundaries.[8] This interest goes hand in hand with a city's right to annex contiguous territory pursuant to Indiana Code Section 36–4–3–4.

We previously acknowledged the significance of a city's interest in its buffer zone in *City of Hobart v. Town of Merrillville*, 401 N.E.2d 726 (Ind.Ct.App.1980), *trans. denied*, in which we held that Hobart had standing to seek a declaratory judgment challenging the validity of Merrillville's annexation of territory within Hobart's buffer zone without seeking its consent. Although *City of Hobart* dealt with the pre–2005 version of Indiana Code Section 36–4–3–9, we find its holding relevant here. In that case, the trial court granted summary judgment in favor of Merrillville on Hobart's complaint for declaratory and injunctive relief. On appeal, Merrillville argued that Hobart did not have standing to challenge the annexation. We disagreed, for the following reasons: (1) Indiana's Declaratory Judgment Act specifically allowed municipalities like Hobart to file suit; (2) the case presented "a true controversy between two adverse parties;" and (3) Hobart had shown that a decision would affect its "rights, status, or other legal relationships[.]" *Id.* at 728 (quotation marks and citation omitted).

Bargersville argues that *City of Hobart* "in no way authorizes a *city* to challenge an annexation based on the interest of *landowners*" under the current version of Indiana Code Section 36–4–3–9. Appellee's Br. at 44 (bold emphasis removed). Appellants insist that Greenwood is not relying on Indiana Code Section 36–4–3–9 "to assert the rights of others but to protect its own interests." Appellants' Reply Br. at 23. Appellants further assert that "Greenwood's statutory right to withhold consent would be meaningless if it could not challenge another municipality's illegal attempt to bypass its refusal to consent under the statute." *Id.* We agree with Appellants on both counts.

Finally, Bargersville contends that Greenwood cannot "purport[ ] to hop into the shoes of the landowners and construe terms of Sewer Service Agreements to which they are strangers." *Id.* at 43. Bargersville states that " 'only the parties to a contract, those in privity with the parties, and intended third-party beneficiaries under the contract may seek to enforce the contract' " and asserts that "Greenwood has no right to demand a judicial construction of contracts to which it is a stranger." *Id.* (quoting *Harold McComb & Son, Inc. v. JPMorgan Chase Bank, NA*, 892 N.E.2d 1255, 1258 (Ind.Ct. App.2008)).

In this instance, we disagree. We emphasize that Greenwood is not seeking enforcement of the sewer service agree-

8. The significance of this interest is reflected in the requirement that at least 51% of the landowners must consent for an annexation to become effective pursuant to Indiana Code Section 36–4–3–9, which is a much higher threshold than that required to defeat a remonstrance pursuant to Indiana Code Section 36–4–3–11 (that is, 35% of the landowners plus one).

ments, but rather a judicial interpretation of the agreements. The Indiana Declaratory Judgment Act specifically provides that any "person," including a municipality, that is

> interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Ind.Code § 34–14–1–2.[9] There is a difference between the interests of Greenwood and the interests of the affected property owners. Greenwood's significant interest in its three-mile buffer zone is undeniably affected by the sewer service agreements, on which the Bargersville Town Council relied in concluding that Bargersville had secured "consent" to the annexation from 51% of the landowners in the Territory pursuant to Indiana Code Section 36–4–3–9. As such, Greenwood was entitled to seek a declaratory judgment as to whether the agreements constituted legally valid "consent" to the annexation. Likewise, Greenwood was entitled to seek a declaratory judgment as to the legal validity of Bargersville's annexation ordinance. In sum, we agree with the trial court that Greenwood has standing to bring a declaratory judgment action.[10]

## II. Did 51% of the Territory's Landowners Consent to Bargersville's Annexation?

The parties agree that the Territory contains 739 parcels of land and that for Bargersville's annexation of the Territory to be valid, the owners of at least 51% of the parcels—that is, 377 parcels—must have validly consented to the annexation pursuant to Indiana Code Section 36–4–3–9. The parties' dispute regarding the validity of the annexation focuses primarily on the meaning of "consent" as used in Indiana Code Section 36–4–3–9 and whether various documents signed by landowners constitute such consent.

In their stipulation, the parties agreed that "the [current] owners of 387 parcels have signed one or more of the documents attached hereto as Exhibits A–L, and therefore the owners of 52 percent of the parcels have themselves signed one of the documents attached to this stipulation." Appellants' App. at 659 (Stipulation ¶ 44).[11] The parties also agreed that "[t]he [current] owners of 281 parcels have purchased parcels with one of the sewer service agreements included in this stipulation in its chain of title[.]" Id. (Stipulation ¶ 45).

Appellants assert—and Bargersville does not dispute—that of these 668 parcels, at least 407 parcels (that is, at least 55% of the 739 parcels in the Territory) are subject to sewer service agreements that were executed prior to the legislature's amendment of Indiana Code Section 36–4–3–9 in 2005. One such agreement,

---

9. *See also* Ind.Code § 34–14–1–13 (defining "person" in relevant part as any municipal corporation).

10. Because we conclude that Greenwood has standing, we need not determine whether the other Appellants have standing. We shall continue to refer to "Appellants" for consistency's sake.

11. Forty-four of these landowners signed a document titled "Petition for and Consent to Annexation into the Town of Bargersville." For reasons that will become obvious later in this opinion, we need not address whether these documents constitute valid consent to Bargersville's annexation pursuant to Indiana Code Section 36–4–3–9.

which Appellants characterize—again without dispute—as representative, reads in pertinent part as follows:

4. Annexation waiver. The Owner convenants and agrees for itself, its legal representatives, heirs, devisees, trustees, grantees, successors or assigns, *that no objection to any annexation of the Real Estate or any part thereof by the Town [of Bargersville] shall be made, that no remonstrance shall be filed, nor shall any appeal from any judgment approving such annexation be taken.* This release of rights to object, remonstrate or appeal against annexation shall be noted on every recorded plat of the Real Estate in the plat restrictions and covenants in the completed form as set forth below. . . .

. . . .

29. Miscellaneous Provisions. . . . .

. . . .

c. Additional Documentation. *The parties hereto shall execute and deliver any and all consents, releases, authorizations, transfer and other documents as may be reasonably required to carry out the provisions of this Agreement and to fully accomplish its purposes and intents.*

Appellants' App. at 829, 836 (emphases added).

▇▇▇▇ Appellants contend that the waiver of the right to object to, remonstrate against, or appeal an annexation does not constitute "consent" to an annexation as contemplated by Indiana Code Section 36–4–3–9. To date, no Indiana appellate court has addressed this issue. In doing so, we are mindful of the following principles of contract interpretation:

The construction of terms of a written contract is a question of law that we review de novo. The goal of contract interpretation is to ascertain and give effect to the parties' intent. We will determine the intent of the contracting parties by analyzing the contractual language within the four corners of the document. If that language is unambiguous, we may not look to extrinsic evidence to expand, vary, or explain the instrument. A contract is not ambiguous merely because the parties disagree as to its proper construction.

*Beazer Homes, Ind., LLP v. Carriage Courts Homeowners Ass'n,* 905 N.E.2d 20, 22–23 (Ind.Ct.App.2009) (citations omitted), *trans. denied.*

▇▇▇▇ Additionally, we adhere to the following tenets of statutory interpretation:

The primary purpose in statutory interpretation is to ascertain and give effect to the legislature's intent. The best evidence of that intent is the language of the statute itself, and we strive to give the words in a statute their plain and ordinary meaning. A statute should be examined as a whole, avoiding excessive reliance upon a strict literal meaning or the selective reading of individual words. The Court presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals.

*State v. Oddi–Smith,* 878 N.E.2d 1245, 1248 (Ind.2008) (citations omitted). "Statutory interpretation is a question of law and is reviewed de novo, or without deference to the trial court's interpretation." *Curley v. Lake County Bd. of Elections & Registration,* 896 N.E.2d 24, 34 (Ind.Ct. App.2008), *trans. denied* (2009).

▇▇▇▇ "In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries." *Butrum v. Roman,* 803 N.E.2d 1139, 1145 (Ind.Ct.App.2004), *trans. denied.* "Consent" has been de-

fined as "[a]greement, approval, or permission as to some act or purpose, esp. given voluntarily by a competent person; legally effective assent." BLACK'S LAW DICTIONARY 323 (8th ed. 2004).[12] Appellants contend that "consent" in this context "requires an affirmative act of approval by the owners, rather than a promise to stand down and not object to an annexation ordinance." Appellants' Br. at 24. Appellants further contend that a remonstrance waiver does not express "affirmative approval of any proposed annexation. Rather, the remonstrance waiver is nothing more than an agreement by the signatory not to participate in the formal, statutory proceeding opposing annexation known as a remonstrance proceeding." *Id.* at 36. Finally, Appellants assert that "the right to object to annexation is separate and distinct from the right to consent to annexation[.]" Appellants' Reply Br. at 11.

We agree with Appellants that waiving the right to object to, remonstrate against, or appeal an annexation is not the same as consenting to an annexation for purposes of Indiana Code Section 36–4–3–9. Bar-

gersville's contention that giving consent to and waiving any objections to annexation are two sides of the same coin ignores the fact that in Indiana, a landowner may respond to an annexation initiated pursuant to Indiana Code Section 36–4–3–9 in more than two ways: namely, by signing a consent to the annexation (pursuant to Indiana Code Section 36–4–3–9(c)),[13] by signing a remonstrance against the annexation (pursuant to Indiana Code Section 36–4–3–11), or by doing nothing, which may be due to any number of reasons, ranging from apathy to having signed a remonstrance waiver. Doing nothing cannot be interpreted as "consent" for purposes of Indiana Code Section 36–4–3–9. *See Cox v. Cantrell,* 866 N.E.2d 798, 809 (Ind.Ct.App.2007) ("We will not read into a statute that which is not the manifest intent of the legislature. For this reason, it is as important to recognize not only what a statute says, but also what a statute does not say.") (citation and quotation marks omitted), *trans. denied.*[14]

A useful analogy may be drawn from the legislative arena, where legislators may

12. In this case, the trial court consulted a thesaurus and stated in its summary judgment order, "Even more interesting are the antonyms, words with an opposite meaning to another word, to consent. Roget's 21st Century Thesaurus lists objection and protest as antonyms of consent.... Therefore, the court finds that the remonstrance waivers that Bargersville secured from the landowners were the equivalent of consenting to Bargersville's annexation." Appellants' App. at 29–30. The trial court's reliance on antonyms in interpreting a statutory term is unorthodox, to say the least. Also, as discussed more fully below, the trial court's reasoning disregards the fact that a landowner may consent to an annexation, remonstrate against an annexation, or simply do nothing.

13. We acknowledge Bargersville's argument that Indiana Code Section 36–4–3–9 "is silent on what form of consent is needed[,]" Appellee's Br. at 22, but we reject its contention

that the statute "does not even require the consent to be in writing." *Id.*

14. We are unpersuaded by Bargersville's (and the trial court's) reliance on *Gregg v. Whitefish City Council,* 323 Mont. 109, 99 P.3d 151 (2004), because the statute at issue in that case provides that a municipality may annex territory unless a majority of the landowners file written objections to the annexation. *See* Mont.Code § 7–2–4710(2) ("If a majority of the real property owners disapprove of the proposed annexation in writing, further proceedings under this part relating to the area or any part of the area proposed to be annexed may not be considered or acted upon by the governing body on its own initiative for a period of 1 year from the date of disapproval."). In other words, a landowner in Montana is deemed to have consented to an annexation if he has not objected. Such is not the case in Indiana with respect to Indiana Code Section 36–4–3–9.

vote either for or against a bill or abstain from voting altogether. Just as abstaining is not the same as voting for a bill, not remonstrating against an annexation is not the same as consenting to an annexation.[15] Indeed, we find it telling that Bargersville does not argue that the owners of the seventy-one parcels not subject to an annexation-related document of any kind consented to the annexation pursuant to Indiana Code Section 36–4–3–9. We also find it telling that the 407 sewer service agreements at issue were executed prior to 2005 and thus prior to the legislature's creation of the landowners' statutory right to consent to Bargersville's annexation.[16]

Bargersville argues that "if there was any doubt that the landowners[ ] consented and that additional documents needed to be executed, the Sewer Service Agreements themselves already require the parties to 'execute and deliver any and all

*consents* . . . as may be reasonably required to carry out the provisions of this Agreement,' which includes the Annexation Waiver." Appellee's Br. at 24 (citing Appellants' App. at 821). We find this argument unavailing because the agreements provided only for the waiver of the "rights to object, remonstrate or appeal against [the] annexation," not for consent to the annexation. As such, the execution and delivery of consents to carry out the waiver provisions of the agreements would have no bearing on the issue of consent to the annexation for purposes of Indiana Code Section 36–4–3–9.

In sum, based solely on the plain language of the sewer service agreements affecting at least 407 of the parcels in the Territory—that is, at least 55% of the total number of parcels—we conclude as a matter of law that those agreements (as well as any other agreements with the same or

15. We agree with Appellants that Bargersville apparently realized as much "when it revised some, but not all, of its sewer service agreements in 2007 to add consent language." Appellants' Br. at 30. One such agreement is entitled "Annexation Waiver, Request and Consent" and reads in pertinent part as follows:

The Owner, for himself, his legal representatives, heirs, devisees, trustees, grantees, successors and/or assigns, agrees to forever waive any and all objections and statutory remedies he may have with regard to any and all potential annexations of the Real Estate and/or any part thereof by the Town of Bargersville, Indiana, *and he hereby consents to any and all such annexations.* The Owner, for himself, his legal representatives, heirs, devisees, trustees, grantees, successors and/or assigns, *further requests that the Real Estate be annexed by the Town,* and the Owner for himself, his legal representatives, heirs, devisees, trustees, grantees, successors and/or assigns *further agrees that the Town, acting on behalf of the Owner, may execute and sign one or more petitions for annexation and all other documents necessary for annexation* of the Real Estate or any part thereof by the Town. The Owner

further agrees and certifies that his agreement waiving any and all objections to annexation and any and all other statutory remedies available by law *and requesting and consenting to annexation* is a covenant that runs with the Real Estate and that this agreement will be recorded in the Office of the Recorder of Johnson County, Indiana. Appellants' App. at 685 (emphases added). We express no opinion regarding whether such an agreement constitutes valid consent to an annexation pursuant to Indiana Code Section 36–4–3–9.

16. Bargersville argues that

[t]he Annexation Waiver would give Bargersville nothing—and "waive" nothing—if the landowners could still defeat annexation by simply withholding consent despite their representation that they would not in any way 'object' to the annexation of their property. The landowners cannot surrender their rights as to an annexation yet retain the right to stop an annexation under [Indiana Code Section 36–4–3–9].
Appellee's Br. at 19. We reiterate that prior to the amendment of Indiana Code Section 36–4–3–9 in 2005, the landowners had no consent to withhold.

similar wording) do not constitute valid consent to Bargersville's annexation pursuant to Indiana Code Section 36–4–3–9.[17] In so concluding, we express no opinion on Appellants' collateral arguments regarding the validity of those agreements.[18] Likewise, we express no opinion on the validity of the remaining documents on which both the Bargersville Town Council and the trial court relied in finding that 51% of the landowners in the Territory had consented to Bargersville's annexation. Even assuming the validity of those documents, far fewer than 51% of the landowners in the Territory consented to Bargersville's annexation. Therefore, we reverse the trial court's grant of summary judgment in favor of Bargersville and remand for further proceedings consistent with this opinion.[19]

Reversed and remanded.[20]

BAKER, C.J., and DARDEN, J., concur.

17. We reject Bargersville's unsupported assertion that "[e]ven if Greenwood could carry its burden to show that the Sewer Service Agreements were not themselves consent, it still needs to take the additional step to show that those bound by the agreements in fact do not consent to the annexation." Appellee's Br. at 28 n.8. If Bargersville sought to rely on any alternative forms of consent, it bore the burden of establishing their validity as a matter of law for purposes of summary judgment. Our review of the record indicates that Bargersville failed to carry this burden.

18. We note that in *Doan v. City of Fort Wayne*, 253 Ind. 131, 252 N.E.2d 415 (1969), our supreme court held that "an owner of land may not validly waive his right to remonstrate against future annexations, unless expressly authorized to do so by statute." *Id.* at 137, 252 N.E.2d at 418. Indiana Code Section 36–9–22–2 provides that a municipality may obtain the release of the right of [landowners] and their successors in title to remonstrate against pending or future annexations by the municipality in exchange for providing sewer services. Whether a landowner may validly *consent* to a future annexation pursuant to a sewer service agreement and thereby bind his successors in title is a different question, unanswered by *Doan,* that we leave for another day.

19. In their brief, amici curiae Indiana Municipal Managers Association, Town of Eaton, Town of Whitestown, and Town of Yorktown argue,

As Indiana annexation law has evolved with time, the public policy underpinnings of annexation have remained fundamentally the same—to enable a municipality to expand its boundaries in a planned and orderly fashion, and to ensure that the residents of the entire municipality receive the package of capital and non-capital municipal services in a uniform manner.

Br. of Amici Curiae at 3. We have no quibble with this general statement of public policy. However, as for amici's assertion that Greenwood's challenge to Bargersville's annexation will have a "potentially disastrous" effect on public policy, *id.* at 10, we agree with Appellants that

[t]o the extent Bargersville was relying on additional property tax revenue from the [Territory] to pay for its sewer capacity, it should have entered into an interlocal agreement with Greenwood to protect that interest. Bargersville's decision to offer sewer service to the landowners within three miles of Greenwood's boundaries, without obtaining Greenwood's prior consent, either through [Indiana Code Section 36–4–3–9] or an interlocal agreement, was taken at its own risk. Bargersville's "settled expectations" of extending municipal services to landowners within the 3–mile zone in return for revenue was at best an unreasonable gamble. This is particularly true here, as Bargersville's sewer service agreements were made at a time the *only* means of consent was through [Greenwood].

Appellants' Reply Br. at 27.

20. We wish to make clear that our decision in no way impacts the landowners' statutory

right to remonstrate against Greenwood's proposed annexation on remand.