

**FILED**

Apr 06 2020, 11:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert J. Palmer
May Oberfell Lorber
Mishawaka, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Paternity of M.S., L.S. and S.S. | April 6, 2020 |
| Maria Arriaga, | Court of Appeals Case No. 19A-JP-1595 |
| *Appellant-Proposed Intervenor,* | Appeal from the St. Joseph Probate Court |
| v. | The Honorable Jason A. Cichowicz, Judge |
| State of Indiana as Next Friend; | The Honorable Graham C. Polando, Magistrate |
| Gabriela Ivonne De Landa, (Mother), and Samuel Salazar, (Father), | Trial Court Cause No. 71J01-1012-JP-1164 |
| *Appellees-Respondents.* | |

**Tavitas, Judge.**

# Case Summary

Maria Arriaga appeals the trial court's order regarding a petition for modification of custody filed by Samuel Salazar ("Father"). We reverse and remand.

# Issues

Arriaga raises four issues, which we consolidate and restate as:

    I.       Whether the trial court erred by denying Arriaga's motion to reopen the evidence.

    II.     Whether the trial court erred by denying Arriaga's motion to intervene.

# Facts

Father and Gabriela De Landa ("Mother") are the parents of M.S., born in 2009; L.S. (the "Child"), born in 2010; and S.S., born in 2012 (collectively, the "Children"). Father and Mother were never married, and Father's paternity of each of the Children was established by a paternity affidavit. Shortly before the Child's birth, the State brought a Title IV-D proceeding regarding support for M.S.; a similar action regarding the Child was filed in February 2011 and consolidated with the action regarding M.S. In April 2011, the trial court entered an order confirming Father's paternity of M.S. and the Child, granting

Mother custody of M.S. and the Child, and ordering Father to pay child support.[1]

[4] Despite the establishment of paternity of the Child, there is a possibility that the Child's biological father is Jerry Hernandez, Arriaga's son. In June 2011, Mother left the Child with Arriaga, and the Child has remained in Arriaga's care since that time.

[5] In March 2018, Father filed a petition to modify the existing custody and child support order regarding the Children. Father alleged that the Child had been in Arriaga's care "for the past year" but that the Child should be in the care of a parent instead of a third party. Appellant's App. Vol. II p. 25. Regarding M.S. and S.S., Father alleged that: (1) by agreement with Mother, Father had custody of M.S. and S.S. from May 2017[2] until November 2017, when Mother took back custody of M.S. and S.S.; (2) after returning to Mother's care, M.S. and S.S. were missing school, and their grades were dropping; (3) while M.S. and S.S. were in Father's care, Mother was convicted of two drug-related felonies;[3] (4) Mother moved four times in the preceding year; and (5) M.S.

---

[1] A similar order was entered in December 2012 regarding the paternity of S.S.

[2] Father has convictions for possession of a controlled substance in 2014 and resisting law enforcement and driving without a license in 2016. Father was released from the Indiana Department of Correction in May 2017.

[3] The initial guardian ad litem ("GAL") report indicates that Mother was charged with possession of cocaine, a Level 6 felony; unlawful possession of a legend drug, a Level 6 felony; and possession of marijuana, a Class B misdemeanor. According to the report: "She entered a plea and was sentenced on all charges on January 24, 2018." Appellant's App. Vol. II p. 33.

reported being inappropriately touched by Mother's fifteen-year-old brother, who regularly cared for the Children when the Children were with Mother. The trial court then appointed a GAL. The trial court also entered a provisional order giving custody of M.S. and S.S. to Father and continued the Child's placement with Arriaga.

[6] Arriaga filed a motion to intervene in September 2018 and alleged that Arriaga was the Child's de facto custodian. Arriaga later filed a "Motion for Formal Recognition of Arriaga Status and Custody Rights" in December 2018. In her motion for recognition of her custody rights, Arriaga noted: "It has always been, and continues to be, in [the Child's] best interests for [Arriaga] to be recognized and treated as her legal custodian, since [Arriaga] has been her primary care provider virtually all of her life."[4] *Id*. at 49.

[7] In the initial GAL report, the GAL recommended that the Child remain in Arriaga's care because "[t]hat placement appears to be the least disruptive to her life and maintains the status quo." *Id.* at 37. In the later, updated GAL's report, the GAL noted that Arriaga "now feels that [the Child] should be in the custody of [Mother]. If, however, that is not possible, she wants to retain [the Child] in her custody." *Id.* at 52. The GAL ultimately recommended that all of the Children be placed with Father.

_____

[4] Indiana Code Section 31-17-2-3 provides: "A child custody proceeding is commenced in the court by: . . . (2) a person other than a parent by filing a petition seeking a determination of custody of the child."

[8] At the March 2019 evidentiary hearing,[5] the GAL, Mother, Father, and Arriaga testified. The GAL testified that Mother and Arriaga alleged Father was involved in gang activity and used drugs. Mother provided the GAL with photographs and an audio recording, which were taken by M.S. The GAL did not offer the photographs or recording into evidence. The GAL stated the photographs were not clear, and as for the recording, the GAL testified, in part:

> It was a discussion. I believe it was after I had gone to the home and spoke [to] one [of] the children. Then there was a discussion between [M.S.] and [Father] and his wife with regard to – I guess I don't – talking about why [M.S.] should stay in their custody and why Mother shouldn't have custody of – of the child, and some – kind of a little bit of an argument between them. And it apparently has been recorded. It had made reference to usage of drugs or possible usage of drugs. . . .

Tr. Vol. II p. 27. On cross-examination, Arriaga offered the photos referenced by the GAL into evidence, but she did not offer the recording or ask the GAL why he did not offer it into evidence himself. The GAL testified that it would be beneficial for the Child to be with her siblings and recommended that Father be granted custody of all three children.

[9] Arriaga testified that the Child has lived with her since the Child was an infant and that Arriaga was willing to have all of the Children live with her. Arriaga

---

[5] It appears that additional evidence was presented at a hearing in August 2018, before Arriaga filed her motion to intervene and motion to establish her custody rights. We were not provided with the transcript of that hearing.

further testified that she still believed the Children should live with Mother. Arriaga also testified as follows:

> Q. Do you feel they should be with you or with their mother?
>
> A. That is hard because [the Child] has always lived with me, and the other children live with [Mother]. But in the end, I do believe that all three should be together.

*Id.* at 70. Mother also testified that, if she did not get custody of the children, she would prefer that Arriaga get custody. During closing arguments, Arriaga's counsel argued that there was no reason to change the current custody situation. Counsel proposed two solutions: (1) "leave things status quo until we can move down the line a little further and establish more stability and get more evidence"; or (2) "put the kids together in either Mom's custody or [Arriaga's] custody." *Id.* at 85. At the conclusion of the March 21, 2019 hearing, the trial court took the matter under advisement.

[10] In April 2019, Arriaga filed a motion to submit additional evidence and sought to submit the recording of Father and his wife made by M.S. The trial court denied Arriaga's motion.

[11] In May 2019, the trial court issued an order granting Father's motion to modify custody. The trial court noted that "all Parties appeared to concede that Father may not be [the Child's] biological father, and that [Arriaga] is indeed the mother of the man who is—or at least might be" the biological father. Appellant's App. Vol. II p. 10. As for Arriaga, the trial court denied each of her

motions. Specifically, the trial court denied Arriaga's motion to intervene because it determined Arriaga was not a de facto custodian. The trial court found:

> De facto custodians must have provided care for a Child for certain periods of time: six months for certain younger children, and one year for certain older children. Ind. Code § 31-9-2-35.5. However, "any period after a child custody proceeding has been commenced may not be included in determining whether the child has resided with the person for the required minimum period." *Id.*

> As above, this proceeding "commenced" with respect to L. on February 9, 2011, under the cause number, since consolidated into this one, of 71J01-1102-JP-93. The Court entered its order establishing paternity a little over two months later, April 26, 2011. Given [the Child's] December, 2010, birthdate, any period of time another person cared for her cannot have reached six months before a child custody proceeding commenced.

> Because Petitioner is not a de facto custodian, her intervention is not mandatory under Ind. Code 31-14-13-2.5(c), nor is she entitled to the quasi-presumption in favor of her custody established by Ind. Code 31-14-13[-]2.5(d). She may still, however, be entitled to discretionary intervention under Indiana Rule of Trial Procedure 24, and may be entitled to custody as a nonparent pursuant to Ind. Code 31-17-2-3(2), subject to the parent's constitutional right to raise the Child.

*Id.* at 10-11.

[12] The trial court then considered the factors of Indiana Code Section 31-14-13-2, granted Father's motion to modify custody, and issued an order "awarding

custody of all three children to Father." *Id.* at 13. The trial court granted
Mother supervised parenting time and denied each of Arriaga's motions. The
trial court further found that it had no authority to grant visitation between
Arriaga and the Child.

[13] Arriaga filed a motion to reconsider, which was deemed denied pursuant to
Indiana Trial Rule 53.4. Arriaga then filed a motion to correct error for the trial
court to consider "newly discovered material evidence" of the recording. *Id.* at
68. Arriaga claimed that the GAL "failed to fulfill his duty in representing the
children" when he did not present the recording to the trial court. *Id.* at 69.
The trial court denied Arriaga's motion to correct error. Arriaga now appeals.

# Analysis

[14] At the outset, we note that no appellee's brief was filed in this case. "When an
appellee fails to submit a brief, we apply a less stringent standard of review with
respect to the showing necessary to establish reversible error." *In re Paternity of
S.C.*, 966 N.E.2d 143, 148 (Ind. Ct. App. 2012), *aff'd on reh'g*, 970 N.E.2d 248
(Ind. Ct. App. 2012), *trans. denied*. "In such cases, we may reverse if the
appellant establishes prima facie error, which is an error at first sight, on first
appearance, or on the face of it." *Id.* "Moreover, we will not undertake the
burden of developing legal arguments on the appellee's behalf." *Id.*

## I. Motion to Reopen Evidence

[15] Arriaga argues that the trial court erred by denying her motion to reopen the
evidence. Evidence must be offered during the course of a trial, and it is a

matter of discretion whether a trial court will permit a party to present additional evidence after the close of all evidence. *In re D.Q.*, 745 N.E.2d 904, 908 (Ind. Ct. App. 2001). We will disturb the trial court's decision only if there is a clear abuse of discretion. *Id.*

[16] Here, Arriaga sought to reopen the evidence to introduce the recording of Father and his wife. This recording was apparently taken by M.S. and provided to the GAL by Mother. The content of the recording was discussed in the GAL's updated report and discussed at length during the evidentiary hearing, and we see no reason why the evidence could not have been offered at that time.[6] We have held that a trial court does not abuse its discretion in refusing to reopen the evidence "when it plainly appears that such evidence could have been offered earlier." *Preuss v. McWilliams*, 141 Ind. App. 602, 607, 230 N.E.2d 789, 792 (1967). The recording plainly could have been offered earlier, and the trial court did not abuse its discretion by denying Arriaga's motion to reopen the evidence.[7]

---

[6] Moreover, we have not been provided with the recording. It appears, however, that the actual recording would have been cumulative of the GAL's testimony regarding the recording. Arriaga has failed to demonstrate any prejudice from the denial of her motion to reopen the evidence. *See* Ind. Appellate Rule 66(A) ("No error or defect in any ruling or order or in anything done or omitted by the trial court or by any of the parties is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties.").

[7] Arriaga also contends that the GAL "did not introduce a copy of the recording into evidence, did not provide a transcript of the recording, did not go into detail regarding the contents of the recording, and apparently did not provide a copy of the recording to any of the other interested parties in the case," and that the GAL "failed to fulfill his statutory duties" and such a "failure can only be remedied by reopening the evidence." Appellant's Br. pp. 23-25. Arriaga, however, cites no authority supporting her assertion that the

## II. Motion to Intervene/De Facto Custodian

[17] Arriaga argues that the trial court erred by denying her motion to intervene. The grant or denial of a petition to intervene is within the discretion of the trial court and is reviewed for an abuse of that discretion. *Granite State Ins. Co. v. Lodholtz*, 981 N.E.2d 563, 566 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable and probable inferences to be drawn therefrom. *Id.*

[18] Arriaga's motion to intervene specifically alleged that Arriaga was the Child's de facto custodian. The trial court, however, found that Arriaga did not qualify as a de facto custodian. On appeal, Arriaga argues that the trial court erred by denying her motion to intervene and by granting custody to Father.[8] We conclude that the trial court erred when it found Arriaga was not a de facto custodian and that, as a result, Arriaga was harmed when the trial court failed

GAL was required to introduce a copy of the recording into evidence. Arriaga has waived this argument. *See* Ind. Appellate Rule 46(A)(8)(a).

[8] The dissent contends that we are addressing issues not raised on appeal. We disagree. We acknowledge that Arriaga's appellate argument on these issues lacks clarity. By denying Arriaga's motion to intervene, the trial court left Arriaga in an unfortunate situation; Arriaga is not a party and cannot challenge the trial court's custody decision if she is not a party to the action. Arriaga argues, "Assuming that the probate court's ruling that [Arriaga] does not meet the definition of 'de facto custodian,' thereby giving her a right to intervene pursuant to Trial Rule 24(A)(1) is correct, [Arriaga] nevertheless qualifies for intervention of right under Trial Rule 24(A)(2)." Appellant's Br. p. 25. Arriaga "claim[ed] an interest" in the modification of custody as the Child's "custodian." *Id.* Arriaga *does* specifically argue that the trial court erred by denying her motion to intervene, and we agree, although on a different basis than she argues. Arriaga also specifically argued to the trial court that she was the Child's de facto custodian, and the trial court specifically addressed whether Arriaga was a de facto custodian. Under these circumstances, we will address the issue.

to follow the relevant statutory provisions in ruling on Father's petition to modify custody.

[19] In denying Arriaga's motions, the trial court first determined that Arriaga was not a de facto custodian. Indiana Code Section 31-9-2-35.5 defines "de facto custodian" as:

> [A] person who has been the primary caregiver for, and financial support of, a child who has resided with the person for at least:
>
> > (1) six (6) months if the child is less than three (3) years of age; or
> >
> > (2) one (1) year if the child is at least three (3) years of age.
>
> Any period after a child custody proceeding has been commenced may not be included in determining whether the child has resided with the person for the required minimum period. The term does not include a person providing care for a child in a foster family home (as defined in IC 31-9-2-46.9).

[20] The following are the relevant dates in this action. The Child was born on December 22, 2010. The State brought a Title IV-D proceeding regarding support for the Child in February 2011. In April 2011, the trial court entered an order, in part, confirming Father's paternity of the Child, granting Mother custody of the Child, and ordering Father to pay child support. In approximately June 2011, when the Child was "six months old," the Child began living with Arriaga. Tr. Vol. II p. 61. The Child was still living with Arriaga when Father filed a petition to modify custody in March 2018.

[21]     In determining the exclusion for the "period after a child custody proceeding has been commenced" under Indiana Code Section 31-9-2-35.5, the trial court found that "this proceeding 'commenced' with respect to [the Child] on February 9, 2011 . . . ." Appellant's App. Vol. II p. 10. The trial court then found that, given the Child's December 2010 birthdate, "any period of time another person cared for her cannot have reached six months *before* a child custody proceeding commenced." *Id.* at 11 (emphasis added).

[22]     The trial court's finding implies that the six-month required minimum period for a de facto custodian determination, which applies here, can run only before but not after a custody determination. The trial court's finding does not account for the fact that, although the Title IV-D proceeding was commenced in February 2011, it was concluded in April 2011, and Arriaga has been caring for the Child since June 2011. The relevant time period for the de facto custodian determination, however, did not start until after the Title IV-D child custody proceeding ended and concluded when Father filed his petition to modify custody in March 2018.

[23]     The trial court's finding would mean that, after a child custody proceeding has been commenced, the required minimum period for a de facto custodian determination is forever tolled and cannot be restarted. Under that interpretation, once a child is subject to an initial custody determination, the child could never have a de facto custodian. We hold that the six-month required minimum period under Indiana Code Section 31-9-2-35.5 can be established either before a child custody proceeding has been commenced or

after such an initial proceeding has been concluded. Thus, the trial court misinterpreted the statute when it determined that Arriaga is not a de facto custodian of the Child.

[24] Our Courts have not yet had an opportunity to interpret the provision in the statute that excludes from the period required to establish de facto custody "[a]ny period after a child custody proceeding has been commenced," so we are presented with an issue of first impression. "Matters of statutory interpretation, which inherently present pure questions of law, are reviewed de novo." *Paquette v. State*, 101 N.E.3d 234, 237 (Ind. 2018). "The primary purpose of statutory interpretation 'is to ascertain and give effect to' the intent of the legislature." *21st Amend., Inc. v. Ind. Alcohol and Tobacco Comm'n*, 84 N.E.3d 691, 696 (Ind. Ct. App. 2017) (quoting *City of Greenwood v. Town of Bargersville*, 930 N.E.2d 58, 68 (Ind. Ct. App. 2010)), *trans. denied*. "The best evidence of legislative intent is the statutory language itself, 'and we strive to give the words in a statute their plain and ordinary meaning.'" *Id.* (quoting *City of Greenwood*, 930 N.E.2d at 68). "As we interpret the statute, we are mindful of both 'what it does say and what it does not say.'" *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1195 (Ind. 2016) (quoting *Day v. State*, 57 N.E.3d 809, 812 (Ind. 2016)). "[W]e do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." *Id.* at 1196 (quoting *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (internal quotation omitted)).

[25] Again, the statute provides in relevant part that a person is a de facto custodian over a child who is under the age of three if the child resides with the person for a period of at least six months, excluding any period of time "after a child custody proceeding has been commenced[.]" I.C. § 31-9-2-35.5. Here, the undisputed evidence shows that the Child has lived with Arriaga since June 2011, when the Child was six months old. The record shows that, while the State filed a Title IV-D petition for child support in February 2011, that petition was granted in April 2011, and the trial court granted custody of the Child to Mother. Thus, the "child custody proceeding" had concluded, and custody was vested in Mother, prior to June 2011, when Mother turned over care and custody of the Child to Arriaga.[9]

[26] Considering what the statute says and does not say, the word "commenced" is significant. We conclude that the time period relevant to establishing a de facto custodianship excludes any period of time after a child custody proceeding has been commenced and while it is pending. After a child custody proceeding has been commenced and has concluded, however, the calculation of the time relevant to a de facto custodian determination is not tolled. Indeed, to interpret the statute otherwise would lead to an absurd result. Here, because the Child began living with Arriaga in June 2011, after the Title IV-D proceeding had concluded and the trial court had granted custody of the Child to Mother, the

---

[9] Whether a Title IV-D petition filed by the State constitutes a "child custody proceeding" for purposes of the de facto custodian statute is a question for another day.

entire time the Child has lived with Arriaga counts toward the statutory time requirement. The Child lived with Arriaga from the age of six months, and she was eight years old when Father filed his petition for modification of custody, which is more than enough time to prove Arriaga's de facto custodian status.

[27] Accordingly, we hold that the trial court erred by determining that Arriaga was not a de facto custodian. Indiana Code Section 31-14-13-2.5(c) provides: "If a court determines that a child is in the custody of a de facto custodian, the court shall make the de facto custodian a party to the proceeding."[10] Given Arriaga's status as a de facto custodian, the trial court abused its discretion by denying Arriaga's motion to intervene.[11]

---

[10] We also note that Indiana Trial Rule 19(A) provides:

> A person who is subject to service of process shall be joined as a party in the action if:
>
> (1) in his absence complete relief cannot be accorded among those already parties; or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:
>
> > (a) as a practical matter impair or impede his ability to protect that interest, or
> >
> > (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
>
> If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.

*See, e.g., Dunson v. Dunson*, 769 N.E.2d 1120, 1126 (Ind. 2002) (holding that the teenager requesting child support from his parents was required to move, pursuant to Indiana Trial Rule 19, to join his aunt as a de facto custodian or dismiss for lack of an indispensable party).

[11] When Arriaga filed her motion to intervene as a de facto custodian, the trial court should have held a hearing on the motion and made Arriaga a party to the proceeding at that time. We acknowledge that the trial court allowed Arriaga to participate in the hearing, present evidence, and cross-examine witnesses. The trial court, however, then failed to apply the relevant statute and cases relating to de facto custodians.

[28] The trial court's failure to consider Arriaga a de facto custodian was not harmless. *See* Ind. Trial Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); Ind. Appellate Rule 66(A) ("No error or defect in any ruling or order . . . is ground for granting relief or reversal on appeal where its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties."). Because the trial court erred in determining that Arriaga was not a de facto custodian, the trial court did not follow the applicable custody modification statutes and caselaw with respect to a de facto custodian, which tainted the proceedings. The trial court's failure to properly recognize Arriaga as a de facto custodian cannot be viewed as harmless error.

[29] Child custody modifications in paternity actions are governed by Indiana Code Section 31-14-13-6, which provides:

> The court may not modify a child custody order unless:
>
> (1) modification is in the best interests of the child; and
>
> (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter.

[30] Section 2 provides:

> The court shall determine custody in accordance with the best interests of the child. In determining the child's best interests,

there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

> (A) the child's parents;

> (B) the child's siblings; and

> (C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) *Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter*.

Ind. Code § 31-14-13-2 (emphasis added).

[31] Because the Child was cared for by a de facto guardian, Indiana Code Section 31-14-13-2.5 is applicable here. The trial court, however, failed to consider this statute, which provides:

> (a) This section applies only if the court finds by clear and convincing evidence that the child has been cared for by a de facto custodian.
>
> (b) In addition to the factors listed in section 2 of this chapter, the court shall consider the following factors in determining custody:
>
>> (1) The wishes of the child's de facto custodian.
>>
>> (2) The extent to which the child has been cared for, nurtured, and supported by the de facto custodian.
>>
>> (3) The intent of the child's parent in placing the child with the de facto custodian.
>>
>> (4) The circumstances under which the child was allowed to remain in the custody of the de facto custodian, including whether the child was placed with the de facto custodian to allow the parent seeking custody to:
>>
>>> (A) seek employment;
>>>
>>> (B) work; or
>>>
>>> (C) attend school.

(c) If a court determines that a child is in the custody of a de facto custodian, the court shall make the de facto custodian a party to the proceeding.

(d) The court shall award custody of the child to the child's de facto custodian if the court determines that it is in the best interests of the child.

(e) If the court awards custody of the child to the child's de facto custodian, the de facto custodian is considered to have legal custody of the child under Indiana law.

[32] In making the custody modification determination here, the trial court should also have been guided by our Supreme Court's opinions in *In re Guardianship of B.H.*, 770 N.E.2d 283 (Ind. 2002), and *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453 (Ind. 2009).[12] In *B.H.*, our Supreme Court recognized a strong presumption "that the child's best interests are ordinarily served by placement in the custody of the natural parent." *B.H.*, 770 N.E.2d at 287. The Court then held that:

> In a proceeding to determine whether to place a child with a person other than the natural parent, evidence establishing the *natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important, but the trial court is not limited to these criteria.* The issue is not merely the "fault" of the natural parent. Rather, it is whether the important and strong presumption that a child's interests are best served by placement with the natural parent is clearly and convincingly overcome by evidence proving that the

---

[12] We recognize that the trial court mentioned *B.H.* The trial court, however, failed to apply the relevant statutes and failed to properly apply *B.H.* and *K.I.*

child's best interests are substantially and significantly served by placement with another person.

*Id.* (emphasis added). In *K.I.*, our Supreme Court expanded upon *B.H.* and addressed the burden of proof where a child was in the custody of a third party and a natural parent sought a change of custody, which is the situation here.

[33] Because the trial court found that Arriaga was not a de facto custodian, the trial court failed to consider the factors of Indiana Code Section 31-14-13-2.5 and the relevant decisions of our Supreme Court on this issue. This failure prejudiced Arriaga's substantial rights and was not harmless. We reverse and remand for the trial court to reconsider its custody modification determination and apply the relevant statutes and cases pertaining to de facto custodians.[13]

## Conclusion

[34] As a result of the trial court's erroneous finding that Arriaga was not a de facto custodian, the trial court abused its discretion by denying Arriaga's motion to intervene. This error also led to the trial court's failure to apply the proper statutes and case authority regarding de facto custodians in the custody modification proceeding. We reverse the trial court's denial of Arriaga's motion to intervene and determination that Arriaga was not a de facto custodian. We remand for the trial court to reconsider its custody modification

---

[13] We express no opinion on the outcome of this custody modification determination. We merely remand for the trial court to apply the correct statutes and cases.

determination and apply the relevant statutes and cases pertaining to de facto custodians.

[35] Reversed and remanded.

Najam, J., concurs.

Vaidik, J., concurs in part, dissents in part.

# IN THE
# COURT OF APPEALS OF INDIANA

In the Paternity of M.S., L.S. and S.S.

Maria Arriaga,

*Appellant-Proposed Intervenor,*

v.

State of Indiana as Next Friend;

Gabriela Ivonne De Landa, (Mother), and Samuel Salazar, (Father),

*Appellees-Respondents.*

Court of Appeals Case No. 19A-JP-1595

**Vaidik, Judge, concurring in part, dissenting in part.**

[36] I respectfully concur in part and dissent in part. I agree with the majority that the trial court did not err by denying Arriaga's motion to reopen the case. I would then address—and reject—Arriaga's only other substantive argument: that Samuel Salazar is not Child's biological father and that the trial court

therefore abused its discretion by placing Child in his custody. *See* Ind. Code §
16-37-2-2.1(p) (an executed paternity affidavit conclusively establishes the man
as the legal father of a child without any further proceedings by a court).
Instead, the majority reverses the trial court's custody decision, which is not
clearly erroneous, based on arguments that are nowhere to be found in
Arriaga's brief, namely, that the trial court should have (1) found Arriaga to be
a de facto custodian and, accordingly, (2) analyzed custody under Indiana Code
section 31-14-13-2.5. That is where I must dissent.

[37]    At the outset, I have no qualms with the general propositions that a de facto
custodian is entitled to intervene in a paternity lawsuit, that such an
intervention sets up procedural hoops that must be jumped through, and that in
some cases failing to abide by those rules may result in reversible error. I
dissent because Arriaga simply does not make this de facto-custodian argument
on appeal, and given the facts, she wisely concedes that denying her
intervention did not have any bearing on the court's ruling. Nonetheless, the
majority reverses on this issue.

[38]    First, this issue is not raised on appeal.[14] Arriaga raises the intervention issue
for one limited reason—"to preserve [her] standing to pursue her appeal and to

---

[14] The majority glosses over the fact that this issue was not raised, in footnote 8 of the opinion:

> We acknowledge that Arriaga's appellate argument on this issue lacks clarity. By denying Arriaga's
> motion to intervene, the trial court left Arriaga in an unfortunate situation; Arriaga is not a party
> and cannot challenge the trial court's custody decision if she is not a party to the action. . . . Arriaga
> *does* specifically argue that the trial court erred by denying her motion to intervene, and we agree,

avoid any argument that she waived her right to appeal." Appellant's Br. p. 15.

Nowhere in her brief does Arriaga argue that the trial court did not consider her

rights as a de facto custodian under Indiana Code section 31-14-13-2.5, let alone

argue that this failure prejudiced her substantial rights. Indeed, Arriaga never

once cites Section 31-14-13-2.5 in her brief, and she does not even argue that

she was entitled to de facto-custodian status. Rather, Arriaga uses the term "de

facto custodian" only once in the argument section of her brief, in the following

sentence about Indiana Trial Rule 24: "Assuming that the probate court's ruling

that [Arriaga] does not meet the definition of a 'de facto custodian,' thereby

giving her a right to intervene pursuant to Trial Rule 24(A)(1) is correct,

[Arriaga] nevertheless qualifies for intervention [as] of right under Trial Rule

24(A)(2)." Appellant's Br. p. 25. Failing to raise this issue on appeal is fatal to

Arriaga's case. She bears the burden of convincing us that the trial court's

judgment is clearly erroneous. In *K.I.*, our Supreme Court explained the

burden of proof:

> The parent comes to the table with a strong presumption that a
> child's interests are best served by placement with the natural

---

although on a different basis than she argues. Arriaga also specifically argued to the trial court that she was the Child's de facto custodian, and the trial court specifically addressed whether Arriaga was a de facto custodian. Under these circumstances, we will address the issue.

It is true that Arriaga argued to the trial court that she should be recognized as Child's de facto custodian, but she did not argue to the trial court that it should consider Indiana Code section 31-14-13-2.5 when making its custody decision. On appeal, Arriaga argues that the trial court erred in denying her motion to intervene only so this court would not dismiss her appeal for lack of standing. I would decide this case against Arriaga assuming she has standing to complain.

.

parent. . . . In essence, although in a very technical sense, a natural parent seeking to modify custody has the burden of establishing the statutory requirements for modification by showing modification is in the child's best interest, and that there has been a substantial change in one or more of the enumerated factors, as a practical matter this is no burden at all. More precisely, the burden is minimal. Once this minimal burden is met, the third party must prove by clear and convincing evidence that the child's best interests are substantially and significantly served by placement with another person. If the third party carries this burden, then the custody of the child remains in the third party. Otherwise, custody must be modified in favor of the child's natural parent.

903 N.E.2d at 460-61 (internal quotations and citations omitted). As was the case in *K.I.*, Arriaga did not carry her burden. Furthermore, given our limited role as an appellate court, we should not bear the burden for her.

[39] Second, Arriaga concedes the issue. As she says in her brief, "From a practical perspective, the probate court's denial of the Motion to Intervene appears to have no bearing on its ruling on the Motion to Modify Custody. The issue is raised solely to avoid any argument that the appeal is waived by failing to challenge the ruling on intervention." *Id.* Arriaga wisely concedes the issue because the trial court did consider the factors of Indiana Code section 31-14-13-2.5. And contrary to the majority's opinion, the trial court did consider the seminal case of *In re B.H.*, 770 N.E.2d 283 (Ind. 2002).

[40] Finally, Arriaga was not prejudiced—let alone substantially prejudiced—by the procedure used by the trial court. Arriaga was present during all court proceedings, was represented by counsel, and called and cross-examined

witnesses. In the trial court's detailed six-page order, it is clear that the trial court considered Arriaga as a potential custodian. The trial court found that Arriaga "appears to have provided excellent care for [Child], and her enrollment of [Child] in a private school is a significant point in her favor." Appellant's App. Vol. II p. 12. But ultimately, citing *In re B.H.*, the trial court found that "such an education falls more along the lines of the 'better things in life for a child,' against which the Indiana Supreme Court has cautioned in evaluating third-party custody." *Id.* Furthermore, the trial court determined that the three children's relationship with one another "further weighs against [Arriaga]" and that Arriaga was not credible when she testified that she would take all three children into her custody. *Id.*

[41] This is a tough case. Mother is unfit as a parent. Father has a sordid past but has straightened out his life and married a woman who the trial court found was a significant advantage to the children. Arriaga wanted custody of the one child she believed to be her natural grandchild, only if Mother was not granted custody. Arriaga told Child throughout her life that Father was not her father, denied visitation to him, and exaggerated his criminal history. The trial court weighed the credibility of the witnesses and following the recommendation of the GAL, a family-law attorney, concluded that it is in the best interests of these children to be together with Father.

[42] I understand that the majority may not agree with the decision of the trial court. But we are a court miles and months away from the courtroom and testimony

in this case. We should not disturb a judgment that is not clearly erroneous on arguments not raised by the parties.

[43] Our decisions from above have real-world consequences. Remand to the trial court will only accomplish insecurity and financial stress for this fledgling family.[15] I would affirm the trial court in all respects.

---

[15] Father likely was not able to afford an attorney on appeal and since he and his wife have been supporting four children on a limited income for nearly a year, it is doubtful that he will be able to afford an attorney upon remand.